| | |
|---|---|
| DOE, et al., <br>     *Plaintiffs*, <br> <br> v. <br> <br> WESTPORT BOARD OF EDUCATION <br>     *Defendant*. | 3:18-CV-01683 (KAD) <br> <br> <br> <br> <br> <br> February 21, 2020 |

**MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 14) AND PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 17)**

Kari A. Dooley, United States District Judge:

This case arises out of Plaintiffs Mr. Doe and Mrs. Doe's ("Parents") unilateral placement of their child ("Student") in an educational program for the 2017-2018 School Year after Defendant Westport Board of Education ("Board") allegedly failed to offer the Student a Free Appropriate Public Education ("FAPE") in violation of the Individuals with Disabilities Education Act ("IDEA"). *See* 20 U.S.C. §§ 1400-1482. Additionally, Parents allege that the Board's denial of Student's FAPE violated the Parents' rights under Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794, and Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131-12134. Primarily seeking reimbursement for costs associated with Student's placement for the 2017-2018 School Year, Parents originally filed a petition before an Impartial Hearing Officer ("Hearing Officer") of the State of Connecticut Department of Education. On August 29, 2018, the Hearing Officer dismissed Parents' claims finding that the Parents lacked standing to bring IDEA claims and that the Hearing Officer lacked jurisdiction over the Parents' Section 504/ADA claims. Thereafter, on October 10, 2018, Parents filed a complaint in this Court seeking (1) reversal of the Hearing Officer's decision and remand to the Hearing Officer for consideration of Parents' claims, or, in the alternative, (2) if this Court finds that the Hearing

Officer correctly dismissed Parents' IDEA claims, either (a) remand to the Hearing Officer to consider Parents' Section 504/ADA claims or (b) retention of Parents' Section 504/ADA claims in this Court to allow Parents to develop a record and seek relief. On March 1, 2019, Defendant moved for summary judgment on the basis that the Hearing Officer's decisions were correct. On the same day, Plaintiffs cross-moved for summary judgment seeking the same relief set forth in their Complaint. For the reasons discussed below, the Defendant's motion for summary judgment is GRANTED in part and the Plaintiffs' motion for summary judgment is DENIED in part.

**Facts**

The following facts are not in dispute. Student, who was previously identified by the Board as a child eligible for special education and related services under the IDEA, is the adopted child of Parents. In September 2016, Parents and the Board entered into a settlement agreement resolving all claims regarding Student's education through August 31, 2017. However, for the 2017-2018 School Year, instead of accepting the Board's proposed individualized education program ("IEP") placing Student in Staples High School in Westport, Connecticut, Parents privately funded Student's enrollment in Journey Home, a therapeutic residential facility in Layton, Utah, while Student attended Layton High School, a public school also in Layton, Utah. Before graduating from Layton High School, Student turned eighteen on May 15, 2018. After the 2017-2018 School Year, on July 12, 2018, Parents filed a petition with the Hearing Officer seeking reimbursement for costs associated with Student's placement even though (1) the Board had not received a written authorization from Student allowing Parents to continue to make educational decisions on her behalf[1] and (2) the Parents had never been (a) appointed as the Student's legal

---

[1] Although Parents "deny" this factual assertion in their Rule 56(a)(2) statement, they do not cite to any evidence in support of this denial but merely assert that this fact is not supported in the record. However, in the parties' Rule 26(f) Report, this fact was listed as undisputed, *see* ECF No. 12, taking this issue out of the case. *See also* Final Decision and Order of the Hearing Officer, ECF No. 1-1 at p. 3 ("[n]o evidence was presented that the Student

guardian or educational representative or (b) authorized to make educational decisions on Student's behalf pursuant to a duly executed power of attorney. As detailed above, the Parents' petition led to the instant action in which Parents seek remand of their claims to the Hearing Officer after the Hearing Officer dismissed Parents' IDEA claims for lack of standing and their Section 504/ADA claims for lack of jurisdiction.

**Standard of Review**

In the IDEA context, a "motion for summary judgment" is simply the mechanism by which parties appeal an administrative determination. *See M.H. v. New York City Dep't of Educ.*, 685 F.3d 217, 226 (2d Cir. 2012). A party's motion for summary judgment, "triggers more than an inquiry into possible disputed issues of fact. Rather, the motion serves as a pragmatic procedural mechanism for reviewing a state's compliance with the procedures set forth in the IDEA . . . and determining whether the challenged IEP is reasonably calculated to enable the child to receive educational benefits." *Id*. at 225–26 (internal citations and brackets omitted). The Court must base "its decision on the preponderance of the evidence, [and] shall grant such relief as the [C]ourt determines is appropriate." 20 U.S.C. § 1415(i)(2)(C)(iii). In determining whether the administrative decision is supported by a preponderance of the evidence:

> [t]he role of the federal courts . . . is circumscribed. The standard of review requires a more critical appraisal of the agency determination than clear-error review but nevertheless falls well short of complete *de novo* review. The deference owed depends on both the quality of the opinion and the court's institutional competence.

*C.F. ex rel. R.F. v. New York City Dep't of Educ.*, 746 F.3d 68, 77 (2d Cir. 2014) (internal quotation marks and citations omitted). However, with respect to matters of statutory interpretation, the

---

notified the Board that she authorized her Parents to continue to have the right to make educational decisions on her behalf after age eighteen, or that she has been determined to be incapacitated.").

Court reviews the administrative decision *de novo*. *See Muller on Behalf of Muller v. Comm. on Special Educ. of E. Islip Union Free Sch. Dist.*, 145 F.3d 95, 102 (2d Cir. 1998).

**Discussion**

**Parental Rights Under the IDEA**

Parents first challenge the Hearing Officer's determination that Parents did not have statutory authority to seek reimbursement under the IDEA. The Hearing Officer determined that Parents' IDEA rights transferred to Student when she turned eighteen on May 15, 2018. As a result, when Parents initiated proceedings before the Hearing Officer on July 12, 2018, Parents no longer had the statutory right to seek reimbursement. Parents' claims were therefore dismissed by the Hearing Officer. The Court agrees with the Hearing Officer.

Under the IDEA, parents have "independent, enforceable rights." *Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 533 (2007) ("IDEA grants parents independent, enforceable rights. These rights, which are not limited to certain procedural and reimbursement-related matters, encompass the entitlement to a free appropriate public education for the parents' child."). Such rights include a right to reimbursement for the unilateral placement of a child in a school different from that proposed by the school district under certain enumerated circumstances. *See E.M. v. New York City Dep't of Educ.*, 758 F.3d 442, 451 (2d Cir. 2014) ("parents who have unilaterally placed their child in private school will be entitled to reimbursement if (1) the school district's proposed placement violated the IDEA, (2) the parents' alternative private placement is appropriate to meet the child's needs, and (3) equitable considerations favor reimbursement.").[2] However, the IDEA also provides that a state may allow for the transfer of all parental IDEA rights

---

[2] The Court notes that Parents are seeking reimbursement for placement of their daughter in a public school, rather than a private school, and Journey Home. The Court need not decide whether Parents would be entitled to reimbursement under these circumstances and decides only the preliminary question of whether the Parents are able to seek reimbursement under the IDEA at all.

4

to the child "when a child with a disability reaches the age of majority under State law." 20 U.S.C. § 1415(m)(1). Connecticut has such a transfer provision. It states: "[w]hen a child with a disability reaches the age of eighteen, (1) the board shall provide any notices required by the IDEA . . . to such child and the parents of such child, and (2) all other rights accorded to the parents of such child under the IDEA . . . shall transfer to such child." CONN. AGENCIES REGS. § 10-76d-12(b) ("transfer provision").

Notwithstanding the provision that "all other rights" accorded to parents under the IDEA transfer to their child when the child turns eighteen, Parents argue that they retain the right to seek reimbursement under the IDEA. The main thrust of their argument is that to hold otherwise would undermine the overarching purpose of the IDEA to provide FAPE to eligible children. On the other hand, in simple terms, the Board argues that the transfer provision means what it says: all parental rights, including parents' right to reimbursement, transfer to their children when they turn eighteen. Resolution of this issue turns on the interpretation of the transfer provision.

To resolve a question of statutory interpretation, courts "begin with the language of the statute." *Frank G. v. Bd. of Educ. of Hyde Park*, 459 F.3d 356, 368 (2d Cir. 2006). Courts afford the words used their normal and commonly understood definitions, *see Wisconsin Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2070 (2018), and determine "whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Frank G.*, 459 F.3d at 368 (internal quotation marks and citations omitted). "[R]eference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole" help courts determine whether the language at issue is plain or ambiguous. *Id.* (internal quotation marks and citations omitted). The "inquiry ends, if the language of the statute is unambiguous and the statutory scheme is coherent and consistent, unless the case comes within

5

the category of cases in which the result reached by applying the plain language is sufficiently absurd to override its unambiguous terms." *Id*. (internal quotation marks and citations omitted). If the language is ambiguous, "we resort to the canons of statutory construction to help resolve the ambiguity." *Id*. (internal quotation marks and citations omitted). While "the need to avoid an absurd result to override the plain language of a statute [is rarely invoked, courts] have long held that where a statute is ambiguous, it should be interpreted in a way that avoids absurd results." *Id*. (internal quotation marks and citations omitted).

Here, the transfer provision is plain and unambiguous. It provides that "[w]hen a child with a disability reaches the age of eighteen, (1) the board shall provide any notices required by the IDEA . . . to such child and the parents of such child, and (2) *all other rights* accorded to the parents of such child under the IDEA . . . shall transfer to such child." CONN. AGENCIES REGS. § 10-76d-12(b) (emphasis added). The language itself and the specific context mandate that all parental IDEA rights, except for certain notification rights as specified in subsection (b)(1), transfer to the child when the child turns eighteen. There is no express or implied additional exception for parental reimbursement rights. There is no ambiguity in the use of the term "all." According to Merriam-Webster's Collegiate Dictionary, 11th Edition, "all" is defined as "every," "the whole amount, quantity, or extent of," and "any whatever." *All*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2003). It is as broad a term as could be used to describe the scope of the rights transfer.

Notwithstanding, Parents argue that it would create an absurd result for this Court to interpret the transfer provision in a way that prevents parents from retaining their right to reimbursement when their children turn eighteen.[3] They further argue that this absurd result either (1) injects ambiguity into the transfer provision's meaning, which must be resolved to allow

---

[3] Parents' argument derives from the IDEA's purpose to provide FAPE to eligible children and the concomitant importance of parental financing in the event school districts fail to propose IDEA compliant plans.

6

parents to retain their right to reimbursement, or (2) overcomes the transfer provision's plain meaning. The Court is not persuaded.

In advancing this claim, Parents rely on two cases in which courts have considered a statute's purpose in determining its scope. In *Forest Grove Sch. Dist. v. T.A.*, the Supreme Court found that parents may seek reimbursement under the IDEA even if their child had never previously received special education and related services under the authority of a public agency. 557 U.S. 230, 247 (2009). The Court, in light of its prior decisions and the IDEA's overall purpose, rejected the argument that § 1412(a)(10)(C)(ii) of the IDEA limited reimbursement to children "who previously received special education and related services under the authority of a public agency" because that subsection did "not *expressly* prohibit reimbursement" for parents who had children that never previously received such services from a public agency. *Id*. at 241 (emphasis added). Parents also rely on *Tanvir v. Tanzin*, 894 F.3d 449, 463 (2d Cir. 2018), *cert. granted sub nom. FNU Tanzin v. Tanvir*, No. 19-71, 2019 WL 6222538 (U.S. Nov. 22, 2019), in which the Second Circuit Court of Appeals found that federal officers may be sued for money damages in their individual capacities under the Religious Freedom and Restoration Act ("RFRA"). While the court did, in part, base its decision on "RFRA's purpose to provide broad protections for religious liberty," it did so in the context of interpreting the phrase "appropriate relief," which the Supreme Court had previously determined to be "open-ended and ambiguous about what types of relief it includes . . . ." *Id*. at 462–63 (internal citations and quotation marks omitted).

Both decisions are inapposite. First, unlike the circumstances in *Tanvir*, the Court is not deciding the scope of the transfer provision having already identified ambiguity in the provision's language. As discussed above, the phrase "all other rights" is clear and unambiguous. And unlike the circumstances in *Forest Grove*, where the subsection in question did not expressly prohibit the

type of relief sought by the parents, the transfer provision here contains an express transfer of "all other rights" to the child and the failure to specifically list all such rights does not somehow create ambiguity where there is none.

Parents next urge this Court to follow the *Latynski-Rossiter v. D.C.* decision. 928 F. Supp. 2d 57, 59 (D.D.C. 2013). In *Latynski-Rossiter*, the court found that § 1415(m), and the associated regulations promulgated by the District of Columbia, did not deprive parents of their right to seek reimbursement under IDEA even though their child had turned eighteen. *Id*. at 62 ("the court deems that [child's] parents have standing to seek reimbursement for [child's] full tuition costs, notwithstanding the transfer of rights contemplated by § 1415(m)."). The court determined that since the parents sought reimbursement for tuition paid, in part, before their child turned eighteen, "[t]here is no reason why their right to compensation should evaporate on the child's eighteenth birthday." *Id*. at 60. The court also said it was "unwilling to endorse an interpretation of the act which might stymie the IDEA's overarching purpose," given that without parental financial assistance, "[children's] IDEA rights would exist on paper only." *Id*. at 61. Lastly, the court identified three absurd results if it were to hold that the parents could no longer seek reimbursement: (1) the parents' right to reimbursement would evaporate upon their child's eighteenth birthday, allowing the district to insulate itself from liability by "dragging its feet," (2) "a child could sue for financial harms that he or she never incurred; if successful, the child would receive funds that he or she never earned," and (3) "parents might be forced to sue their own children," if the children received reimbursement but did not repay their parents. *Id*. at 62.

Many of the district court's concerns in *Latynski-Rossiter* are, in the Court's view, not implicated here. First, the decision does not discuss whether there were other avenues by which parents might retain their IDEA rights. In Connecticut, the child "may notify, in writing, the board

8

of education that the parent of such child shall continue to have the right to make educational decisions on behalf of such child . . . ." CONN. AGENCIES REGS. § 10-76d-12(e). Parents may also be able to seek reimbursement as the child's "legal guardian appointed by the court" if the child is "determined to be incapacitated by a court" or as an "educational representative" if the child is "certified as unable to provide informed consent or to make educational decisions." *See* CONN. AGENCIES REGS. § 10-76d-12(f)-(g). Lastly, the child may authorize her parents to make educational decisions on her behalf using a power of attorney. CONN. AGENCIES REGS. § 10-76d-12(h).

In addition, nor does interpreting the transfer provision by its plain meaning thwart or undermine the IDEA's purpose by eliminating parental financial assistance for children who need it as portended by the D.C. court. Regardless of whether the right to seek reimbursement has transferred, it is never a certainty that reimbursement will be ordered where the parents have made a unilateral educational placement. Indeed, under the IDEA, "[i]f the parents of a child with a disability . . . enroll the child in a private elementary school or secondary school without the consent of or referral by the public agency, a court or a hearing officer *may* require the agency to reimburse the parents for the cost of that enrollment *if the court or hearing officer finds that the agency had not made a free appropriate public education available to the child in a timely manner prior to that enrollment*." 20 U.S.C. § 1412(a)(10)(C)(ii) (emphasis added); *see also E.M.*, 758 F.3d at 451 ("parents who have unilaterally placed their child in private school will be entitled to reimbursement if (1) the school district's proposed placement violated the IDEA, (2) the parents' alternative private placement is appropriate to meet the child's needs, and (3) equitable considerations favor reimbursement."). Accordingly, unilateral placement of a child in an educational setting that differs from the school district's proposed plan always presents the risk

that parents will not be reimbursed. Interpreting the transfer provision by its plain meaning simply recognizes another potential bar to reimbursement and does not, in the Court's view, incentivize parents to forego providing financial assistance to their children.[4]

The *Latynski-Rossiter* court also failed to address a situation in which an adult-child and her parents disagree as to whether an IDEA violation occurred or the appropriate remedy. As the Hearing Officer in this case noted:

> [T]here are good reasons that Connecticut and other states would choose to vest *all* educational rights in the student to the exclusion of parents after the age of eighteen. There is no mechanism in the law, for instance, to guide an impartial hearing officer where a student and parent do not agree whether a violation occurred or what is an appropriate remedy. Extending the right to pursue a claim to both a student and a parent would also make it difficult, if not impossible, to resolve cases through the resolution and mediation processes.

Final Decision and Order of the Hearing Officer, ECF No. 1-1 at p. 4. The scenario of a disagreement between the parents and their adult-child was not addressed by the *Latynski-Rossiter* court and is, of itself, reason to afford the transfer provision its clear and unambiguous meaning.

In sum, even if the transfer provision, as understood by its plain meaning, dictates an unfavorable result for parents under some circumstances, that occasional result is not so absurd that this Court should or could disregard the transfer provision's plain meaning. Accordingly, the Hearing Officer correctly determined that Parents no longer had the statutory right to seek reimbursement under the IDEA after their daughter turned eighteen and properly dismissed their IDEA claims. *See, e.g.*, *Loch v. Edwardsville Sch. Dist. No. 7*, 327 F. App'x 647, 650 (7th Cir. 2009) (finding that parents of child that turned eighteen before parents filed suit did not have standing under IDEA to seek reimbursement among other forms of relief); *Ravenna Sch. Dist. Bd.*

---

[4] The alternative avenues available to parents by which they can seek reimbursement, coupled with the court's ability to "grant such relief as the court determines is appropriate," 20 U.S.C. §1415(i)(2)(C)(iii), combine, in the Court's view, to minimize if not eliminate the potential for the "absurd results" identified by the *Latynski-Rossiter* court.

*of Educ. v. Williams*, No. 5:11CV1596, 2012 WL 3263258, at *3 (N.D. Ohio Aug. 9, 2012) (finding that parents do not retain their rights under IDEA when their child turns eighteen); *Neville v. Dennis*, No. 07-2202-CM-DJW, 2007 WL 2875376, at *1–2 (D. Kan. Oct. 3, 2007) (finding that parent did not have rights under IDEA after her child turned eighteen even though (1) the parent filed an administrative complaint before her child turned eighteen and (2) the child was a minor during the period when he was allegedly denied a FAPE).

**Hearing Officer's Jurisdiction Over Section 504/ADA Claims in Connecticut**

Parents also challenge the Hearing Officer's dismissal of Parents' Section 504/ADA claims for lack of jurisdiction. In the alternative, Parents argue that if the Hearing Officer lacked jurisdiction over their Section 504/ADA claims, then this Court should allow Parents to pursue those claims in this action.

Under Connecticut law, an IDEA Hearing Officer's jurisdiction is limited to IDEA claims. *See generally* CONN. GEN. STAT. § 10-76h(d) (describing the authority of the "hearing officer or board"). To the extent an IDEA Hearing Officer considers Section 504/ADA issues, he may only do so "provided that a determination of the issue is necessary to ensure that the substantive and procedural rights of the particular child or parent or guardian who initiated due process are being complied with . . . ." *Mrs. L., et al., v. Gerald N. Tirozzi, et al.*, Consent Decree, No. H-89-209 (PCD) (D. Conn. Sep. 30, 1991) (ECF No. 17-1) (directing IDEA Hearing Officers "to rule upon substantial issues involving alleged procedural and/or systemic violations of state and federal law regarding the education of handicapped children, including violations of the Rehabilitation Act . . . ."). In a letter issued by the Connecticut State Department of Education, the Commissioner of Education told School Superintendents, "please note that the provisions of the Mrs. L consent decree extend the jurisdiction of the state's IDEA hearing officers to make determinations

regarding Section 504 claims only as necessary to resolve the claims made under the IDEA." Circular Letter C-13, Series 2008-2009, Reissue of Circular Letter C-9, Series 2000-2001, Mark K. McQuillan, Comm'r of Educ., Conn. State Dep't of Educ., at p. 2 n.2.

Here, Parents cite to both the *Mrs. L.* consent decree and the Circular Letter C-13, Series 2008-2009 in support of their request. However, they then conclude that Connecticut IDEA Hearing Officers have jurisdiction over Section 504 claims pursuant to the consent decree only "when students are covered by IDEA and other civil rights statutes." Pl. Mem. of Law in Supp. of Mot. for Summ. J., ECF No. 17-2 at p. 11. This is an overbroad and unsupported reading of the *Mrs. L.* consent decree. It is clear to this Court that, in Connecticut, IDEA Hearing Officers' jurisdiction is limited to IDEA claims and they may only consider Section 504/ADA issues as is necessary to resolve those claims. Because it was unnecessary for the Hearing Officer to resolve Section 504/ADA issues in its consideration of Parents' IDEA claims, the Hearing Officer correctly found that it lacked jurisdiction over Parents' Section 504/ADA claims.

Parents next argue that it would be inconsistent for this Court to find that IDEA Hearing Officers lack jurisdiction over Section 504/ADA claims when IDEA requires exhaustion of its administrative procedures before parties may bring Section 504/ADA claims that seek relief for the denial of a FAPE. *See* 20 U.S.C. § 1415(l); *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 754 (2017) (finding that plaintiffs must bring their case before an IDEA hearing officer if the "lawsuit seeks relief for the denial of a [FAPE]."). In other words, Parents argue that parties bringing claims under Section 504 or the ADA cannot simultaneously be required to exhaust IDEA's administrative procedures, but also be denied a forum for doing so. The Court disagrees. There is nothing inconsistent about requiring parties to exhaust IDEA's administrative procedures when seeking relief for the denial of a FAPE before bringing Section 504/ADA claims if the Section

504/ADA claims also seek relief for the denial of a FAPE. To satisfy this requirement, parties must simply follow IDEA's administrative procedures; they need not be successful at any point of that process. *See, e.g., Avoletta v. City of Torrington*, No. 3:07CV841AHN, 2008 WL 905882, at *7 (D. Conn. Mar. 31, 2008) (noting, "[t]he fact that the plaintiffs believed that the relief they sought was not likely to be awarded at the administrative level does not mean that resort to the IDEA's administrative procedures would have been futile."). Moreover, Parents were not denied a forum for these claims. Even though the Hearing Officer declined to exercise jurisdiction over Parents' Section 504/ADA claims, the Hearing Officer ruled on the merits of Parents' IDEA claims, albeit on a threshold issue.

**Parents' Standing to Bring Their Section 504 and ADA Claims in this Court**

Left for the Court is the question of whether the Parents' Section 504 and ADA claims remain with the Court insofar as the Parents have now exhausted their administrative remedies as required by the IDEA. On this issue, the Board summarily asserts that the Parents lack standing to bring such claims. The Parents clearly disagree but neither party has adequately briefed the issue. It is unclear, for example, whether the Parents assert "associational" discrimination under either statute, whether they seek redress for discrimination against their daughter, or assert standing on some other basis. Nor does the Board adequately explain its position with authority or analysis. Accordingly, the parties shall file, on or before March 21, 2020, supplemental memoranda addressing the issue of the Parents' standing to bring the Section 504 and ADA claims contained in the complaint.

**Conclusion**

The Plaintiffs' motion for summary judgment is DENIED in part and the Defendant's motion for summary judgment is GRANTED in part. The Court (1) AFFIRMS the Hearing

Officer's dismissal of Plaintiffs' IDEA claims and (2) AFFIRMS the Hearing Officer's dismissal of Plaintiffs' Section 504/ADA claims for lack of jurisdiction.

The Plaintiffs' alternative request for relief, that the Court retain and adjudicate their claims brought pursuant to the ADA and Section 504, shall be taken up following the submission of the supplemental briefing ordered above.

**SO ORDERED** at Bridgeport, Connecticut, this 21st day of February 2020.

                                           */s/ Kari A. Dooley*
                                           KARI A. DOOLEY
                                           UNITED STATES DISTRICT JUDGE