UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DOE, et al.,<br>*Plaintiffs*, | )<br>)<br>) | 3:18-CV-01683 (KAD) |
| v. | )<br>) | |
| WESTPORT BOARD OF EDUCATION<br>*Defendant*. | )<br>) | October 30, 2020 |

**MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 14) AND PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 17)**

Kari A. Dooley, United States District Judge

As discussed in this Court's previous Memorandum of Decision (ECF No. 23), this case arises out of Plaintiffs Mr. Doe and Mrs. Doe's ("Parents") unilateral placement of their child ("Student") in an educational program for the 2017-2018 School Year after Defendant Westport Board of Education ("Board") allegedly failed to offer the Student a Free Appropriate Public Education ("FAPE") in violation of the Individuals with Disabilities Education Act ("IDEA"). *See* 20 U.S.C. §§ 1400-1482. Parents also alleged that the Board's 2017-2018 plan for Student violated Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794, and Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131-12134. After this Court granted in part the Board's motion for summary judgment and denied in part Parents' motion for summary judgment, the Court was left to consider Parents' alternative request for relief that the Court retain and adjudicate their claims brought pursuant to Section 504 and the ADA. In aid of that consideration, the Court directed the parties to submit supplemental briefing addressing the issue of Parents' standing to bring the Section 504 and ADA claims contained in the complaint. Upon receiving the parties' supplemental briefing and for the reasons that follow, the Court GRANTS Parents' alternative request for relief.

**Discussion**

Parents allege that they are entitled to relief under Section 504 and the ADA for the expenses they incurred due to the Board's violation of Section 504 and Title II of the ADA in connection with the Student's 2017-2018 School Year. The parties' familiarity with the allegations and procedural history of this case is presumed.

**Standing Under Section 504**

Section 504 provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). Section 504 further provides that remedies "shall be available to *any person aggrieved* by any act or failure to act by any recipient of Federal assistance . . . ." *Id*. § 794a(a)(2) (emphasis added). The Second Circuit has recognized that such broad language "evinces a congressional intention to define standing to bring a private action under 504 [and Title II] as broadly as is permitted by Article III of the Constitution." *Innovative Health Systems, Inc. v. City of White Plains*, 117 F.3d 37, 47 (2d Cir. 1997) *recognized as superseded on other grounds by Zervos v. Verizon New York, Inc.*, 252 F.3d 163, 171 n.7 (2d Cir. 2001) (internal quotation marks omitted). Accordingly, "non-disabled parties bringing associational discrimination claims [under Section 504] need only prove an independent injury causally related to the denial of federally required services to the disabled persons with whom the non-disabled plaintiffs are associated." *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 279 (2d Cir. 2009) (Wesley, J., concurring and delivering opinion of the court as to associational standing under Section 504).

In *Loeffler*, the Second Circuit held that two non-disabled children had standing under Section 504 to sue a hospital that allegedly failed or refused to provide sign language interpretation services to their deaf father thereby causing the children to suffer harm—providing the interpretation services, missing school, and being "involuntarily exposed to their father's condition [including the suffering of a stroke.]" *Id*. at 280–81. To have standing under Section 504, the Second Circuit held that the children only needed to "establish that each suffered an injury independent from their [father] that was causally related to the [h]ospital's failure to provide services to their [father]" because "the type of injury a 'person aggrieved' suffers need not be exclusion from the participation in, denial of the benefits of, or subjection to discrimination under any program or activity receiving Federal financial assistance." *Id*. at 280 (internal quotation marks, alterations, brackets, and citation omitted).

Here, Parents argue they have statutory standing under Section 504 insofar as they suffered an independent injury (i.e., tuition and other expenses) causally related to the Board's denial of federally required services to Student, a disabled person with whom Parents are associated. Defendant argues that Parents do not have standing under Section 504 because they allege an injury (i.e., tuition and other expenses), which is not separate and distinct from Student's alleged injury consisting of the Board's denial of a FAPE. The Defendant relies on *Wong v. Seattle Sch. Dist. No. 1*, No. C16-1774 RAJ, 2018 WL 1035799, at *3 (W.D. Wash. Feb. 23, 2018), which, in the context of an Article III standing analysis, held that plaintiff-parents did not have standing to pursue claims under either Section 504 or the ADA because the expenses they incurred by placing their disabled child in a private institution after the defendant-school district failed to provide the child a FAPE was not an injury separate and distinct from that of their child. *Id*. The court noted that "Plaintiffs do not allege that they were excluded or discriminated against separately or

3

independently from the actions taken toward their child." *Id*. However, at least with respect to Section 504, the *Wong* court's decision is inconsistent with the holding in *Loeffler* that the injury alleged need only be caused by discrimination towards a disabled person and need not consist of exclusion or discrimination directed at the non-disabled plaintiff. This Court is bound by *Loeffler*.

Here, Parents have alleged a pecuniary injury arising out of the Defendant's alleged violation of Section 504 with respect to their disabled daughter. Under *Loeffler*, they have standing to pursue these claims. Indeed, the concurring opinion in *Loeffler* included the observation that "[i]f [the two children] had not known sign language but instead had paid for an interpreter to resolve the problem created by the Hospital's failure to meet their parents' needs would there be any question they would have a claim?" 582 F.3d at 281.[1] Accordingly, the Parents may pursue their Section 504 claims in this action.

**Standing Under Title II of the ADA**

Likewise, it appears Parents have standing under Title II to sue the Board. Title II of the ADA, which prohibits various forms of discrimination by state and local governments, provides in pertinent part: "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Title II further provides that remedies are available "to *any person* alleging discrimination on the basis of disability . . . ." 42 U.S.C. § 12133 (emphasis added). Accordingly, the Second Circuit, in *Innovative Health*, recognized associational standing with respect to Title II claims. 117 F.3d at

---

[1] Defendant further argues that Parents do not have standing insofar as they cannot prove that the Board denied Student federally mandated benefits because Student is not pursuing an IDEA claim and Parents, as this Court previously decided, may not pursue an IDEA claim. This argument misconstrues the nature of the remaining claims. Parents are not pursuing an IDEA claim. They are pursuing a Section 504 claim. To state a *prima facie* claim under Section 504, Parents will have to show that "[Student] was denied the opportunity to participate in or benefit from [the Board's] services, programs, or activities, or was otherwise discriminated against by [the Board], by reason of [Student's] disability." *Harris v. Mills*, 572 F.3d 66, 74 (2d Cir. 2009). The Court does not herein assess the merits of this claim.

47–48. There, the plaintiffs, a provider of drug and alcohol counseling services and several of its clients, sued the City of White Plains alleging discrimination when it revoked a building permit which would have allowed the service provider to relocate to the downtown area of the city. *Id*. at 40. The court held that the service provider, IHS, had standing to assert claims in light of the expansive language of Title II which allows "any person alleging discrimination on the basis of disability" to pursue claims. *Id*. at 47 (emphasis omitted) (quoting 42 U.S.C. § 12133). Indeed, as discussed above, the court noted that "the use of such broad language . . . evinces a congressional intention to define standing to bring a private action under 504 [and Title II] as broadly as is permitted by Article III of the Constitution." *Id*. (internal quotation marks omitted). Therefore, where IHS's building permit was revoked on the basis of its disabled clientele, the court determined it had standing. *Id*. at 48.

Here, Parents allege that the Board's violation of Title II with respect to their disabled daughter caused Parents to incur various expenses. Under these circumstances, in which Parents do not allege that they themselves were discriminated against in violation of Title II (as was the case in *Innovative Health*), the Second Circuit has not had occasion to decide whether associational standing exists. While the Second Circuit, in *Loeffler*, determined that "non-disabled parties bringing associational discrimination claims [under Section 504] need only prove an independent injury causally related to the denial of federally required services to the disabled persons with whom the non-disabled plaintiffs are associated," 582 F.3d at 279, that decision involved a determination of associational standing under Section 504 only, *id*. at 288 (Jacobs, J., dissenting from decision of the court regarding associational standing under Section 504, noting that "the majority opinion does not prejudge the analogous question [of associational standing] under the ADA"). Indeed, contrary to the *Loeffler* holding, Title II's implementing regulation suggests that

5

associational standing under Title II is limited to non-disabled people who have themselves been discriminated against because of their association with a disabled person insofar as it provides that "[a] public entity shall not *exclude* or otherwise *deny* equal services, programs, or activities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association." 28 C.F.R. § 35.130(g) (emphasis added); *see Noel v. New York City Taxi & Limousine Comm'n*, 687 F.3d 63, 69 (2d Cir. 2012) ("In enacting Title II, Congress directed the Attorney General to promulgate regulations to implement Title II(A) . . . and the Attorney General's regulations add scope and shape to the general prohibitions in the ADA[.]" (internal citation omitted)).

Nevertheless, in the absence of a clear directive from the Second Circuit to the contrary, the Court finds that Parents have standing under Title II because they allege a separate and distinct injury resulting from the alleged denial of services to their disabled child just as the children in *Loeffler* had standing under Section 504. 582 F.3d at 279. The Court looks first to *Innovative Health*. There, although the plaintiff, IHS, was itself denied the building permit (or had it revoked), the Court's determination of standing did not turn on this fact. *Innovative Health Systems, Inc.*, 117 F.3d at 46–48. Indeed, the court's analysis was fleeting and merely invoked an expansive reading of Title II rendering its standing provision coterminous with Article III. *Id.* at 47. And notably, the Defendants had conceded Article III standing with respect to IHS. *Id.* at 46.

Next, the Court notes that in large measure courts view the ADA and the RA as being all but identical in scope. *See Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003) (noting that unless a subtle distinction between the statutes "is pertinent to a particular case, we treat claims under the [ADA and the RA] identically"); *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 287–88 (5th Cir. 2005) (noting that rights and remedies under both the ADA and the RA are the same).

Indeed, Judge Wesley noted in *Loeffler* that the language in Title II is virtually identical to Section 504 and "[f]or the sake of argument, [he] assume[d]" that the rights afforded under each statute with respect to associational standing are the same. 582 F.3d at 281 n.4 (Wesley, J., concurring). In combination, this authority, which supports a broad interpretation of standing under Title II and recognizes the similarities between the ADA and the RA, leads the Court to conclude that Parents have standing to bring claims under Title II just as they have standing to bring claims under Section 504 as discussed above. *See B.D.S. v. Southold Union Free Sch. Dist.*, No. CV-08-1319 SJF WDW, 2009 WL 1875942, at *15 (E.D.N.Y. June 24, 2009) (finding that parent had standing under the ADA and Section 504 seeking, among other things, reimbursement due to the denial of a FAPE for her disabled child because "a parent of a child with a disability has a particular and personal interest in preventing discrimination against that child" (internal quotation marks omitted)).[2]

**Conclusion**

For the foregoing reasons, Parents' alternative request for relief to proceed under Section 504 and the ADA is GRANTED.

**SO ORDERED** at Bridgeport, Connecticut, this 30th day of October 2020.

       /s/ Kari A. Dooley
       KARI A. DOOLEY
       UNITED STATES DISTRICT JUDGE

---

[2] To the extent *Innovative Health* counsels only an Article III analysis, the Court further observes that the Parents have met the requisite standard for standing by alleging that they suffered a financial injury resulting from the Board's alleged denial of services to their child. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016) ("The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."). In particular, Parents alleged a financial injury that "is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id*. at 1548 (internal quotation marks omitted).